# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CEYLON M. ROWLAND, M.D.,

    Defendant.

CIVIL ACTION NO.
1:05-CV-1110-RWS

## **ORDER**

This case is before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. [48]). After considering the entire record, the Court enters the following Order.

## **Background**

This case arises out of a dispute over the alleged breach of a National Health Service Corps ("NHSC") scholarship agreement between the United States of("the Government" or "Plaintiff") and Ceylon M. Rowland, M.D. ("Rowland" or "Defendant").[1] The Government alleges that Defendant

---

[1]The factual background is taken from Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment [48-2] to which Defendant filed no response. Thus, the facts as stated by Plaintiff are deemed admitted. L.R.

breached the agreement by failing to serve in the position to which she was assigned by the Secretary of Health and Human Services ("the Secretary") and that, as a result, the Government is entitled to liquidated damages.

Defendant executed and presented an application to participate in the NHSC program on or about August 19, 1989. The Department of Health and Human Services ("DHHS") approved the application and awarded Defendant a scholarship on September 29, 1989, for the period of 1989-1990. On February 1, 1990, DHHS provided Defendant with additional scholarship support for the 1990-1991 and 1991-1992 school years. Through the NHSC program, Defendant received scholarships to cover the tuition, fees, stipends, and other costs while attending three years of medical school at Morehouse School of Medicine ("Morehouse").

DHHS records indicate that Defendant received a total of $71,234 in scholarship assistance, and Rowland does not dispute this figure. She proceeded to graduate from Morehouse with a medical degree in 1992. Following her graduation, Defendant was granted a four (4) year deferment of her service obligation, extending through June 1996, to complete a residency in

---

56B.(2)(a)(2) N.D. Ga.

2

Obstetrics and Gynecology.  Defendant is presently licensed in the State of Georgia as a physician.

The NHSC scholarships were awarded to Defendant on the condition that, following her graduation, she would serve as a member of the NHSC in the full-time clinical practice of her profession as a commissioned officer in the regular or reserve corps of the Public Health Service, or as a civilian member of the NHSC in a health shortage area (formerly known as health manpower shortage area) "as determined by the Secretary" and designated under Section 332 of the Public Health Service Act ("PHSA").  Defendant was to serve one year of obligated service for each year of scholarship support.  Having received three (3) years worth of scholarship funds, Defendant was thus required to serve three (3) years.  This service period was to begin on July 1, 1996.  A scholarship recipient may serve as a civil employee of the government, as a commissioned officer in the Public Health Service or serve under what is referred to as a Private Placement Option. ("PPO").  Bloom, 112 F.3d at 202, n.3, citing 42 U.S.C. 254m(b)(1)(A), (b); 42 U.S.C. 254n.

The agreement further provided that, if the scholar failed to begin the period of obligated service incurred under the contract for any reason other than

3

those specified, the Government would be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest as set forth in the contract formula. Defendant has admitted that she was aware of this breach of contract clause in the agreement.

In July 1995, Defendant was sent an NHSC Placement Information Bulletin for the 1996 Placement Cycle. The return receipt card for the bulletin reflects delivery on July 31, 1995. In this bulletin, the agency informed scholars that they could match to any approved vacancy on the HPSA Placement Opportunity List during the Early Decision Alternative ("EDA"), which would run from July 1, 1995 to March 31, 1996. If the scholar did not match to a site during the EDA, the scholar would be assigned by the Secretary to a specific site during the Vacancy Assignment Phase beginning April 3, 1996. The bulletin also provided that a Private Practice Option was possible, but only during the EDA. Further, the bulletin informed the scholars that if they did not accept an assignment, they would be in breach of their NHSC scholarship agreement.

On April 23, 1996, the Department of Health and Human Services notified Rowland that she had been assigned to the Samuel U. Rodgers Health

4

Center in Kansas City, Missouri. Defendant was instructed to contact the Regional Consultant in the Kansas City Regional Office. This notification was sent to the Michigan address that had been provided by Defendant. Defendant signed a return receipt card dated May 6, 1996 pertaining to the assignment letter.

Defendant failed to report to her assignment, to contact the Regional Program Consultant, or to serve in the position at Samuel U. Rodgers Health Center. She failed to provide the DHHS of any of her subsequent addresses as she moved to College Park, Georgia; Greenville, North Carolina; Macon, Georgia; and Lawrenceville, Georgia.[2]

On July 11, 1996, the NHSC sent a letter to Defendant advising her that the NHSC had recommended that she be placed in default of her scholarship service obligation and be liable for the debt set forth in her contract. When this letter came back undelivered, the agency placed telephone calls to Defendant's

---

[2]Defendant argues in her responsive brief that her forwarding address was registered with the United States Postal Service and that the Government should have discovered her new addresses through her residency program, her former medical school, or a physician locator database.

5

last known home phone number, which was disconnected and to her last known work number.

Defendant claims that she notified the Secretary of HHS that she would be serving her obligation under the private practice option of the program by working in the Greenville, North Carolina area at a private clinic. However, under the terms of the agreement, to meet the requirements of the PPO, Defendant would have had to apply for a release from service as a member of the NHSC and enter into a written agreement with the Secretary agreeing to fulfill his or her remaining service obligation in a full-time private clinical practice in an HPSA "selected by the Secretary." 42 U.S.C. 254n(a)(2); Section A.4 and Section B.5 of the agreement. Defendant has no documentation to show that she succeeded in making any such communication or agreement with the agency. Furthermore, Defendant did not receive any verbal or written approval from the agency for her request to exercise a PPO, and Greenville, North Carolina has never been designated as a primary medical care health professional shortage area.

In 1997, Defendant began working full time in Greenville, North Carolina at the Women's Health Center as a physician specializing in obstetrics

6

and gynecology. She became a partner at the Women's Health Center in 2000 but left in 2002. In 2003, she accepted a position at the Gwinnett Medical Center. There, she was promoted to medical director, and her current salary is $235,000 per year.

On July 31, 2003, Defendant was notified that she had been placed in default and was advised that failure to make repayment arrangements would result in collection actions. Defendant made one payment of $100.00 on or about October 2003. She has also made two payments during the course of this litigation. The outstanding balance on the debt incurred as a result of Defendant's breach is $671,834.50 (including principal and interest through February 14, 2005). Defendant has failed to repay the amount that is due, although demand has been made.

## Discussion

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears

7

AO 72A
(Rev.8/82)

'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In determining a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

In her response to the government's motion, Defendant contends first that the statute of limitations bars this suit from proceeding and second that she complied with her service obligation under the NHSC scholarship program by working at a private facility in Greenville, North Carolina.[3] The Court

---

[3] While the Court declines the government's invitation to strike Defendant's response to Plaintiff's Motion for Summary Judgment altogether, the Court does note that Defendant has failed to address Plaintiff's Statement of Material Facts and has neglected to point to any facts in the record which support her position.

9

concludes, however, that this lawsuit was timely filed. The government is correct in indicating that Congress has abolished the statute of limitations under 42 U.S.C. Sec 254o(e). This provision controls and waives the statute of limitations in the collection of student loans by the government. See United States v. Glockson, 998 F.2d 896, 897-98 (11th Cir. 1993) (discussing congressional elimination of statute of limitations governing collection of student loans and congressional intent for this rule to apply retroactively).

The Court further notes that even if this case were governed by the old six-year statute of limitations, it was timely filed. 28 U.S.C. § 2415(a); see also Glockson, 998 F.2d at 897. Defendant admits to having made a $100.00 payment in October 2003, but she claims that the purpose of the payment was a good faith gesture. However, she does not dispute that the payment was applied to her outstanding debt and that she expected it to be applied. By making the payment, Defendant triggered the renewal of the debt under 28 U.S.C. § 2415(a), which provides for renewal in the event of a either a payment or an acknowledgment of the loan. Thus, by making a payment to be applied to the outstanding balance, Defendant's action triggered a renewal of the debt. See United States v. Bloom, 112 F.3d 200 (5th Cir. 1997) (showing that partial

10

payment renews the statute of limitations). Thus this case was brought by the Government within the statute of limitations period, and Defendant's argument fails.

In her second defense, Defendant argues that she complied with her obligations under the agreement by joining a private clinic in Greenville, North Carolina. Defendant points to a listing of medically under-served ("MUA") areas which includes Greenville, North Carolina. However, these MUA designations are used by the government for the purpose of funding the Community Health Center program under 42 U.S.C. § 254(b). This list does not represent a designation used for the National Health Service Corps and its scholarship program under 42 U.S.C. § 2541(f)(1)(B)(v). Contrary to Defendant's contention, Greenville has never been designated as an HPSA. As explained above, the Secretary assigned Defendant to the Samuel U. Rodgers Health Center in Kansas City, Missouri. Defendant does not dispute that she never served there. The undisputed record also shows that the Secretary did not approve Defendant's service in Greenville, North Carolina. And furthermore, Greenville is not designated under the NHSC program as a qualifying area. Defendant's claim that she is entitled to credit for working there fails.

11

For these reasons, the Court concludes that Plaintiff is entitled to summary judgment. The Government's Motion for Summary Judgement shall be **GRANTED**.

**Conclusion**

In conclusion, Plaintiff's Motion for Summary Judgment (Dkt. No. [48]) is hereby **GRANTED**. Within five (5) days of the entry of this Order, Plaintiff shall file with the Court a statement of the amount of the judgment sought, including principal and interest plus costs, but less payments made by Defendant. Defendant shall have five (5) days to file objections to Plaintiff's calculations. The Clerk shall submit the case to the Court upon Defendant's filing of objections or the expiration of five (5) days from the filing of Plaintiff's statement, whichever occurs earlier.

**SO ORDERED**, this   29th   day of July, 2008.

_Richard W. Story_
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)